# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DUSTIN R. COREY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18-cv-20-JPG |
| vs. | ) |
| | ) |
| **DONALD R. JONES,** | ) |
| **CHET L. SHAFFER,** | ) |
| **JOHN DOE, and** | ) |
| **JANE DOE,** | ) |
| | |
| Defendants. | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Jacksonville Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff raises claims pertaining to his pretrial detention at the Franklin County Jail ("Jail") in September and October 2017. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-

1

27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

According to the Complaint, Plaintiff was a pretrial detainee at the Jail in September and October 2017. (Doc. 1, p. 4). Plaintiff alleges that the examination room in the nurses' station was equipped with a surveillance camera that recorded visual and audio footage. Plaintiff also contends that, without his consent, a correctional officer remained in the examination room during medical consultations. Plaintiff contends that having a correctional officer present during medical consultations and recording the visits using a surveillance camera – standing alone – violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). (Doc. 1, pp. 4-5). More specifically, Plaintiff alleges Defendants violated his rights in the following ways:

1. "[B]y having a C/O present in the EXAMINATION ROOM of the NURSE STATION and VIDEO CAMERA RECORDING AUDIO/VIDEO ALL WITHOUT THE PRIOR CONSENT OF THE PLAINTIFF[;]"

2. "[B]y having a VIDEO CAMERA in the EXAMINATION ROOM of the NURSE STATION that RECORDS AUDIO/VIDEO while we strip down clothing, during PHYSICALS, EXAMS, INTAKES, etc.…then viewed by other persons not a DOCTOR or NURSE[;]"

3. "[B]y the DEFENDANTS is having the PLAINTIFF strip down clothing, answer questions about his MEDICAL HISTORY, while on CAMERA, RECORDING AUDIO/VIDEO WITHOUT the PRIOR CONSENT OF THE PLAINTIFF asked by the NURSE/DOCTOR[;]" and

4. "By the Defendants allowing a C/O of the Franklin county Jail to sit in the EXAMINATION ROOM of the NURSE STATION, while we STRIP DOWN CLOTHING, during CHECK-UPS, EXAMS, ENTAKES, ETC…also while we discuss our MEDICAL HISTORY, while a CAMERA RECORDING AUDIO/VIDEO."

(Doc. 1, pp. 4-5). These allegations are generalized complaints about the use of surveillance cameras in medical examination rooms and/or having officers observe medical examinations, are not associated with any particular individual, and, for the most part, do not describe a particular incident involving Plaintiff. *Id.* Further, aside from alleging that Defendants were responsible for his healthcare and well-being, Plaintiff does not describe how the Defendants were personally involved in the alleged violations relating to medical examinations. *Id.*

Plaintiff also contends that "Defendants" violated his due process rights by refusing to allow him to file grievances about the cameras and correctional officers being present during medical examinations. (Doc. 1, p. 5). Plaintiff specifically alleges that on October 16, 2017, Shaffer threatened Plaintiff about pursuing any complaints about the jail having cameras in the examination rooms. *Id.* An affidavit attached to the Complaint alleges that on October 12, 2017, Plaintiff complained to Shaffer (in person) and wrote a letter of complaint to Jones regarding surveillance cameras in the examination rooms. (Doc. 1, p. 3). Plaintiff claims that four days later, Shaffer threatened him in relation to his complaints about cameras. *Id.*

## Discussion

**Count 1 –** The use of surveillance cameras in medical examination rooms and/or having correctional officers observe medical examinations violated Plaintiff's constitutional right to privacy.

**Count 2 –** The use of surveillance cameras in medical examination rooms and/or having correctional officers observe medical examinations violated HIPAA.

**Count 3 –** Defendants subjected Plaintiff to cruel and unusual punishment, in violation of the Fourteenth Amendment, by using surveillance

3

>
> cameras in medical examination rooms and/or having correctional officers observe medical examinations.

.

**Count 4 –** Jones and Shaffer violated Plaintiff's due process rights by ignoring and/or mishandling grievances.

**Count 5 –** First Amendment retaliation claim against Shaffer for retaliating against Plaintiff for filing grievances by threatening him.

## Count 1

Plaintiff alleges that Defendants violated his privacy by using surveillance cameras to monitor medical examinations and by allowing correctional officers to monitor the same. The Court understands Plaintiff's allegations to encompass the fact that cameras record and/or officers observe inmates in various states of undress during the examination and that cameras record and officers hear communications between the inmate and physician.

At best, prisoners have "very limited privacy rights." *Franklin v. McCaughtry*, 110 F. App'x. 715, 719 (7th Cir. 2004) (citing *Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995)). Those rights, however, are limited due to the realities of confinement, most importantly the need to maintain security and order in jails and prisons. *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979); ("There must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.") (internal quotation omitted). The Seventh Circuit has found that a prison has a "very strong interest in having its guards observe prisoners at all times and in all situations." *Canedy v. Boardman*, 91 F.3d 30, 34 (7th Cir. 1996). This is because, constant observation provides for a more secure facility. *See Canedy v. Boardman*, 16 F.3d 183, 186 (7th Cir. 1994) (in suit relating to constitutionality of female guards observing male inmates in states of undress and during private settings, court noted that "prison officials have an obvious interest in security").

Neither detainees nor prisoners have a right to be free from reasonable surveillance. The Seventh Circuit has held that a prisoner retains no expectation of privacy in his cell under the Fourth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 525-30 (1984). Likewise, the Seventh Circuit found no protected privacy interest at stake, in the context of jail policies that expose nude male detainees to female guards. *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) (holding that female prison guards can monitor male detainees who are in the shower or on the toilet). Indeed, the "monitoring of naked prisoners is not only permissible... but also sometimes mandatory." *Matthews v. Raemisch*, 513 F. App'x. 605, 608 (7th Cir. 2013) (quoting *Johnson*, 69 F.3d at 146).

The Seventh Circuit has not explicitly recognized the viability of any constitutional medical privacy claim for inmates.[1] *Franklin v. McCaughtry*, 110 F.App'x. 715, 718–19 (7th Cir. 2004); *Massey v. Helman,* 196 F.3d 727, 742 n. 8 (7th Cir. 1999); *Anderson v. Romero*, 72 F.3d 518, 52324 (7th Cir. 1995). Some circuits have recognized a privacy right for prisoners in their medical information, but those cases have involved the purposeful dissemination of intensely private medical information. *See Franklin*, 110 F. App'x. at 719 (refusing to recognize such a privacy right, but noting other circuit authority on this point and indicating that viable claims were restricted to dissemination of "intensely private medical information," such as HIV status or transsexualism). *See also Moore v. Prevo*, 379 F. App'x. 425, 427 (6th Cir.2010) (limiting right of privacy to disclosures of highly private and sensitive information to "other inmates," rather than other corrections officers).

---

[1] Additionally, this claim cannot be rooted in Plaintiff's right to physician-patient confidentiality. Federal courts do not recognize a physician-patient privilege. *Whalen v. Roe*, 429 U.S. 589, 602 n. 28 (1977) ("The physician-patient evidentiary privilege is unknown to the common law."). Further, the physician-patient privilege is inapplicable in this context. The privilege protects a person who has imparted confidential information to a physician from having such information revealed in the course of litigation. It does not exist independently of certain proceedings to which it applies. *See* I John W. Strong et al., *McCormick on Evidence* § 98 (5th Ed. 1999). It is not give rise to a constitutional right.

Considering the above, the fact that Plaintiff was monitored in the nude – standing alone – states no claim. To the extent that Plaintiff is alleging a claim premised on his right to medical privacy, the Seventh Circuit has not acknowledged such a right. As such, Count 1 must be dismissed with prejudice for failure to state a claim upon which relief may be granted.[2]

## Count 2

To the extent Plaintiff is attempting to raise a claim under HIPAA, this claim is meritless, as there is no private right of action under that statute. *Carpenter v. Phillips*, 419 F. App'x. 658, 659 (7th Cir. 2011). Accordingly, Count 2 must be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Count 3

Regardless of Plaintiff's right to privacy with respect to his medical examinations, he is not "without a remedy for calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1084). That is, Plaintiff can state a claim for cruel and unusual punishment by "plausibly alleg[ing] that the [incident] in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order or security in [the] prison [ ]." *See King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). In such a case, the Eighth Amendment[3] protects against "calculated harassment unrelated to prison needs." *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987); *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). That being said, conditions that create

---

[2] This claim is also problematic because it is not associated with any particular Defendant. Plaintiff does not articulate how any of the defendants were personally involved in the decision to use cameras during examinations and/or were personally involved in monitoring Plaintiff during examinations.

[3] Although civil rights claims brought by detainees arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.' " *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)).

"temporary inconveniences and discomforts" or that make "confinement in such quarters unpleasant" are insufficient to state an Eighth Amendment claim. *Adams v. Pate,* 445 F.2d 105, 108, 109 (7th Cir. 1971).

The Complaint does not support a Fourteenth Amendment claim against Defendants. The reasons for monitoring prisoners at all times are obvious and have been discussed at length by the Seventh Circuit. *See, e.g.*, *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995); *Whitman v. Nesic*, 368 F.3d 931 (7th Cir. 2004); *Mays v. Springborn*, 575 F.3d 643 (7th Cir. 2009); Matthews v. Raemisch, 513 F. App'x. 605 (7th Cir. 2013). Here, Plaintiff does not allege that the monitoring was done to humiliate him or was carried out in a humiliating manner. He also does not allege that any information or recordings of his medical examinations were disseminated for an improper purpose. At most, Plaintiff may have experienced discomfort or embarrassment by being examined in front of a correctional officer and/or by knowing that the examination was being recorded. However, there are legitimate penological interests in monitoring prisoners during medical examinations which outweigh Plaintiff's discomfort or embarrassment. The presence of correctional officers during a medical exam and/or the use of cameras to monitor a medical exam – standing alone – do not give rise to an Eighth Amendment claim.

Count 3 shall therefore be dismissed for failure to state a claim upon which relief may be granted. However, because the problems with this claim could potentially be cured through an amendment, the dismissal shall be without prejudice.

The Court notes that this claim is also deficient because it is not associated with any particular individual. Plaintiff has not articulated how any of the Defendants was personally involved in violating his rights. Any attempt to amend this claim should address that issue.

## Count 4

Plaintiff claims that that Jones and Shaffer failed to provide him with an adequate grievance process and/or ignored his grievances. This claim is a non-starter: the Seventh Circuit has rejected any free-standing due process claim concerning a prison's grievance process. *See, e.g., Courtney v. Devore*, 595 F. App'x. 618, 620–21 (7th Cir. 2014) (noting that "state grievance procedures do not create substantive liberty interests protected by due process," and the "mishandling" of those grievances states no claim); *Owens v. Hinsley*, 635 F.3d 950, 953–54 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause...."). Therefore Count 4 will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## **Count 5**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). To establish a § 1983 claim of First Amendment retaliation, an inmate must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future;" and (3) a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citation omitted).

Here, Plaintiff's grievances and/or complaints about cameras in the nurses' station qualify as constitutionally protected activity. *Hoskins v. Lenear,* 395 F.3d 372, 375 (7th Cir. 2005). But, Plaintiff's retaliation claim falters on the second element; he merely alleges that, after complaining, Shaffer "threatened" him. Plaintiff has not identified any adverse action, let

alone one severe enough to deter a person from exercising his First Amendment rights. Accordingly, this claim shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Pending Motions

**Motion for Service of Process at Government Expense (Doc. 4)**

Plaintiff's Motion for Service of Process at **Government Expense** is **DENIED**. Plaintiff is a prisoner who has been granted permission to proceed in this action as a poor person. Accordingly, the Court will order service as a matter of course upon all defendants who remain in this action if and when Plaintiff's First Amended Complaint survives preliminary review.

**Motion for Recruitment of Counsel (Doc. 3)**

Plaintiff's Motion for Recruitment of Counsel is hereby **DENIED**. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc*., 706 F.3d 864, 866–67 (7th Cir. 2013). When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir.2007). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this

includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

As to the first question, Plaintiff did not provide sufficient information for the Court to determine if he has made a reasonable effort to obtain counsel on his own. As to the second question, Plaintiff indicates that he is a high school graduate, but is "not versed in the laws of civil procedure." (Doc. 3, p. 2). The Complaint demonstrates Plaintiff has an ability to construct coherent sentences and organize his claims into a cohesive pleading. At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak. All that is required is for Plaintiff associate specific claims with specific defendants and/or to provide additional information (if there is any) that might support his claims. No legal training or knowledge is required to do this. Therefore, the recruitment of counsel is not warranted at this time and the motion is denied. The Court will remain open to the appointment of counsel in the future.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1, 2** and **4** are **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted**. IT IS FURTHER ORDERED** that **COUNTS 3** and **5** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted**.**

**IT IS FURTHER ORDERED** that, with respect to **COUNTS 3** and **5,** Plaintiff is granted leave to file a First Amended Complaint. If Plaintiff wishes to proceed with these claims, he shall file his his First Amended Complaint within 28 days of the entry of this order

(**March 1, 2018**). It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 18-cv-20-JPG. The amended complaint shall present each claim in a separate count, using the numbers as designated by the Court above. In each count, Plaintiff shall specify, by name,[4] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original Complaint, rendering the original Complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Plaintiffs' claims and must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.

If Plaintiff fails to file an amended complaint in accordance with the instructions set forth in this Order, this case shall be subject to dismissal with prejudice for failure to comply with an order of the Court. *See* FED. R. CIV. P. 41(b). Plaintiff may also incur a "strike" within the meaning of § 1915(g) if his complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. No service shall be ordered on any Defendant until after the Court

---

[4] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail him a blank civil rights complaint form.

Finally, Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P 41(b).

**IT IS SO ORDERED.**

**DATED: February 1, 2018**

*s/J. Phil Gilbert*
**U.S. District Judge**
